# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM CHANCERY.

OCTOBER TERM, 1845.

---

FULGENCE CHEGARY, APPELLANT, v. JAMES J. SCOFIELD
AND THOMAS L. KING, RESPONDENTS.

1. An appeal lies from an order dissolving an injunction.

2 The appeal itself does not stay proceedings on the order appealed from.

3. After appeal, the Court of Errors and Appeals may stay proceedings on the order appealed from, and this power extends to orders dissolving injunctions.

4. An order of this court staying proceedings under an order dissolving an injunction which was appealed from, was, under the circumstances stated in this case, vacated at the next subsequent term.

---

Fulgence Chegary, in August, 1844, exhibited his bill in the Court of Chancery, stating that, in 1839, he bought of J. R. Freeman a tract of land of about seventy acres, near the village of Madison, in Morris county, for the sum of $3875, and gave to Freeman a mortgage thereon, for $1400, part of the purchase money, on which mortgage, $1000, with interest from April, 1844, remained due. That when he bought the said

525

land, there was an old dwelling-house and barn on it, much out of repair, and that the fences were in a state of decay. That he bought the said tract for the purpose of building a large house thereon, for a seminary on an extensive sale, and accordingly, in 1839, built such house thereon, at the cost of $10,000, and that he expended on said tract, in fences and other improvements, about $2000 more.

That after he bought the said land, he became indebted to "the president, directors, and company of the State Bank at Morris" in the sum of $1500, to secure the payment of which, he, with Heloise D., his wife, gave to the said bank a mortgage on the said tract of land. That in 1843, the said bank, by J. J. Scofield, their solicitor, exhibited their bill in the Court of Chancery for the foreclosure of the said mortgage and the sale of the said tract, at which time he and his wife resided in the city of New York, where they have resided ever since. That in April, 1844, a decree was made in that suit for a sale of the mortgaged premises, and an execution for the sale thereof was delivered to Thomas L. King, sheriff of Morris county. That on the 12th August, 1844, the said sheriff sold the premises at Morristown, about three miles distant from the premises, in lump, for $3400. That J. J. Scofield, the solicitor for the said bank, purchased the premises at the said sheriff's sale, but had not yet taken a deed from the sheriff. That he, Chegary, prior to the sale, and for some time afterwards, and until August 21st, 1844, had no knowledge that the sheriff had the execution, or that the premises were advertised for sale. That he took a newspaper, called "The Jerseyman," printed at Morristown, in which he supposed the sheriff would advertise the sale, whenever he intended to sell by virtue of any execution that might be issued upon the said decree, and that the sale was not advertised in the said newspaper.

That he, Chegary, long before, and at the time of the sale, had counsel engaged for him in his law business in New Jersey, namely, J. W. Miller and E. Whelpley, esquires, residing in Morristown, who knew nothing of the sale, and did not know that the sale was advertised, as he, Chegary, was informed.

That G. Desabay, his brother-in-law, who resided on the premises at the time of the sale, and had resided there for seve-

ral years before, knew nothing of the sale, as he informed him, Chegary. That he, Chegary, had many acquaintances at Morristown, and in the neighborhood of the mortgages premises, who knew nothing of the sale, as he is given to understand, or that the premises were advertised for sale. That the sheriff never adjourned the sale, but sold on the first day appointed for the sale. That the premises were worth, at the time of the sale, $10,000, and would have brought $8000 at the sheriff's sale, if he, Chegary, had been apprised thereof. That it was his intention to have procured a purchaser of the premises whenever the sheriff should advertise the sale, and had a number of French gentlemen in view on whom he relied, being himself a Frenchman, who were able to purchase and save the property from being sacrificed. That the said farm or tract of land, reserving the said house built by him and two acres of ground adjoining thereto, is worth enough to satisfy the said two mortgages ; and that the premises might have been sold in such manner as to save so great a loss as he must sustain if the sheriff's sale be allowed to stand. That the said sale, as he has been advised, and has reason to believe, was not duly advertised.

The bill prays relief against the said sale, and that new biddings be allowed ; and that the sheriff be enjoined from delivering a deed to said Scofield.

On the 30th August, 1844, the injunction was allowed.

On the 14th January, 1845, on motion and argument, without answer, the injunction was dissolved.

Shortly after the dissolution of the injunction, and within the thirty days given to appeal, the sheriff made and delivered a deed for the premises.

On the 12th February, 1845, Chegary filed his petition of appeal in this court, appealing from the said order dissolving the injunction ; and stating, as grounds for appeal, that the matters stated in his bill are sufficient to support the injunction ; that the defendants have not answered the bill ; and that, therefore, on the motion to dissolve the injunction, the matters stated in the bill were to be taken as true.

At the July Term, 1845, of this court, on motion in behalf of Chegary, this court made an order staying all proceedings under

and by virtue of or consequent upon the said sheriff's sale, until the determination of the appeal or this court make other order.

At the October Term, 1845, of this court, a motion was made on behalf of the appellees to vacate the last-mentioned order.

*J. J. Scofield* and *H. W. Green,* for the motion. They cited 3 *John. Rep.* 540, 547 ; 4 *Ibid.* 25, 510 ; 7 *John. Chan. Rep.* 295 ; 2 *Hoff. Ch. Pra.* 31, 32 ; 15 *Ves.* 185 ; 20 *Wend.* 590 ; 1 *Halst. Dig.* 239 ; 2 *Wend.* 137 ; 17 *Ves.* 380.

*S. Scudder* and *P. D. Vroom, contra.* They cited *Elm. Dig.* 63, *No.* 62 ; *Cranch,* 51 ; 1 *Green's Ch.* 182 ; 3 *Paige* 381, 386 ; *Ibid.* 213 ; *Eden on Injunc.* 229 ; 15 *Vesey* 180 ; 5 *Price* 468 ; 2 *Exch. Rep.* 279 ; 1 *Jac. and Walk.* 616 ; 14 *Ves.* 585 ; 9 *Paige* 502, 503.

HORNBLOWER, Chief Justice.

The great object of the complainant's bill was to set aside the sheriff's sale, and to have the premises re-sold, in the hope of a more advantageous one. This was a legitimate object, and one the complainant may attain, if his case is such as to entitle him to it. But, in order to accomplish this result, it was necessary for him to arrest the proceedings of the sheriff, and prevent him from delivering a deed to the purchaser. He therefore prayed that the Chancellor would grant an injunction restraining the sheriff from executing and delivering a deed for the premises to Mr. Scofield, the purchaser.

Upon perusing the complainant's bill, it seems the Chancellor thought an injunction ought to issue ; and, accordingly, he enjoined the sheriff from executing or delivering a deed to the purchaser until the further order of the court. Soon afterwards, the defendants, upon notice, moved the Chancellor to dissolve the injunction, and after hearing the parties by their counsel, he made an order dissolving it. From this order the complainant appealed to this court, and at the last term, (and, as they say, by surprise, and in the absence of the respondents' counsel,) obtained an order of this court in the following words (*pro ut.*)

The respondents now move to vacate that order, as irregularly and unadvisedly made. Upon this motion, I consider the

whole question open before the court, whether *such an order* could lawfully be made by this court. But counsel have not only argued that question, but have discussed the expediency or justice of making any such order, if the court had authority to do so. The debate on this secondary question led unavoidably, at least to some extent, to an examination of the bill, and a discussion of the merits of the case, or, in other words, to an inquiry whether the appellant, by his bill of complaint, had entitled himself in equity to a writ of injunction.

Upon this latter question I do not mean to express any opinion. It will be time enough to do so when this appeal comes to be heard upon the merits. Whether the Chancellor committed an error in dissolving the injunction is a matter not now before this court. The simple question now to be decided is, whether *the order* made at the last term ought to be vacated; or, which is the very same thing, whether this court have any right to make *such an order* as the one entered at the last term?

That the Chancellor, after an appeal from his decision, may make a temporary order suspending the effects or the legal consequences of such decision, until the appeal can be heard; or, in case the Chancellor does not do so, that this court has power to restrain the party from proceeding to execute or act *under* or *in pursuance* of the Chancellor's decree, *or to do what that decree has simply left him at liberty to do*, I have no doubt.

The latter position seemed to be denied by the respondents' counsel, and, with great ability and learning, he pointed out the distinction between an appeal from an order of the Chancellor which *authorized*, or *created*, or *gave a right* to the party to *do*, or to *enjoy*, or to have something which, without such order or decree, he could not have done or enjoyed, and an order which simply left the party at liberty to act as he might have done if no bill had been filed, or no injunction had ever issued. In other words, between those cases where the party is proceeding to execute the decree, or is acting under an affirmative or specific authority given him by the decree, and those cases in which the Chancellor, by his order or decree, only sets the party free from any restraint and releases him to do what he might have done before bill filed. This is, no doubt, a plain distinction, and for some purposes may be a useful one, and

though, in the view I have taken of this case, it may not be necessary to examine the soundness of that distinction, or, rather, the use of it, as applied to this case, yet, that I may not be misapprehended, I feel bound to say that the distinction, though it exists in the mind, can have, in my opinion, no such practical influence in this case as counsel thinks it ought to have.

The argument is, that as the Chancellor only dissolved the injunction, the sheriff was at liberty to act just as he might have acted before the bill was filed. It was just as if no injunction had ever been issued; that he was not executing any decree; he was not proceeding *in* the cause; he was not doing anything for the doing of which he derived his authority from the Chancellor.

It seems to me the inconclusiveness of this argument must appear by simply asking the question whether, after this bill filed, and after the Chancellor had granted the injunction, the sheriff could have delivered the deed without the Chancellor's permission? Certainly he could not; and then it is by the authority and permission of the Court of Chancery, and in virtue of the Chancellor's judicial decision, that he acts in the matter and delivers the deed. It is this very decree that the appellant complains of in this court, and he comes here to get it reversed.

What is the difference between simply dissolving the injunction and dismissing the bill upon a final hearing?

If I file a bill claiming a tract of land, and get an injunction restraining the defendant from tearing down a house, or cutting down the timber, and while the injunction is in force, the cause comes to a hearing on the pleadings and proofs, and the Chancellor decides against my title and dismisses my bill, and thereupon the defendant renews his work of destruction, does he not do it by the authority and under the decree of the Chancellor? And if I appeal from that final decree, cannot this court interpose, and by an order in the nature of an injunction protect the property and restrain the defendant and all other persons acting or claiming under him from wasting and destroying the property? Would it be any answer to say it is the same as if no bill had ever been filed, and no injunction had

ever been issued against him ; or that he stands in the same situation as he did before suit brought, and is only doing what he had a right to do before any injunction was granted ? This argument would render an appeal utterly useless in every case of an injunction bill. A defendant might in every case after injunction dissolved, and even after appeal filed, destroy the property and defeat the substantial rights of the party. But the admission by counsel that the Chancellor, after a decree of dissolution, upon an appeal being filed, might by order renew, in effect, the injunction, in my opinion admits the right of this court to do so.

But I have put my decision on other grounds, and have said thus much only to preclude any conclusion that I have acted upon the distinction contended for by the respondents' counsel. I go upon the ground that the rule entered at the last term is *nugatory and useless.* If the sheriff has not delivered the deed the appellant does not want the rule, but he wants one in substance according to the prayer of his bill. He wants an order in the nature of an injunction restraining the sheriff from delivering the deed. If the sheriff has already delivered the deed, that order must fall to the ground as soon as we hear the appeal on the merits, whether we reverse or affirm the Chancellor's order. If we affirm, then we send the record back to him with our decree of affirmance, and nothing else. If, on the other hand, we reverse the Chancellor's decision, we must send the record back to him with our decree reversing his decision, and restoring the very same injunction which he erroneously dissolved. In either case, then, what becomes of this order respecting the action of ejectment ?

We must not forget that we are sitting here as a court of appeal. We can do nothing but review the particular order or decree appealed from, except that, where the Chancellor has, by his decree, given a party a right to a thing, we may restrain him from using it until we can hear the appeal on the merits; or, where the Chancellor, by his decree, has loosened a man's hands, we may, by a preliminary order, tie them up again, until we can hear the appeal and determine whether he ought to be let loose or not. But surely we cannot, either before or after we hear the appeal, make a new and original order more

extensive than the scope of the complainant's bill, and more extensive, too, than the prayer of his bill. And, more especially, we cannot make an order upon a statement of facts not contained in the bill, and upon persons not parties to the bill.

To put this matter in a plainer light, if possible, we have only to ask ourselves this question : if this cause had been heard by the Chancellor on bill and answer, could we, on *this* bill, have made a decree that the Morris Bank, Alfred Ford and J. R. Freeman should not be at liberty to give the sheriff's deed in evidence upon the trial of the ejectment in Morris county ? This will not be pretended. Then, surely, we ought not to make a temporary order larger than the Chancellor can make after hearing the cause.

Let us look at this matter in another aspect. We are of opinion that the Chancellor was wrong in dissolving the injunction which restrained the sheriff from delivering the deed. We therefore reverse his decree and order that the injunction shall be reinstated and stand in full force. If, in addition to that order, which we remit to the Chancellor, we annex to it an order that certain persons, by name, who are lessors of the plaintiff in an action of ejectment, shall not use that deed on the trial of the cause, what sort of a record will the proceedings in chancery show when they come to be enrolled ? It will furnish a precedent of a new and original injunction issuing out of this court, against new parties, and upon new facts, and this, too, upon a mere appeal from a Chancellor's order dissolving a former injunction.

And yet, if we do not send this order to the Chancellor, what good will it do ? The very moment we have heard the appeal and sent the record back, the plaintiffs in ejectment may proceed, for the Chancellor certainly cannot restrain them, upon this bill, from using the deeds on the trials.

In every view I can take of this case, it seems to me this order is an extra-judicial proceeding, and ought to be vacated.

WHITEHEAD, J., CARPENTER, J., and Judges PORTER, SPENCER, SPEER, ROBERTSON and SCHENCK, concurred.

HALSTED, President.

This is not the occasion for expressing any opinion on the merits of the case made by the bill. The party supporting the order has had no opportunity of presenting to this court the question of the propriety of opening the biddings in this case. I shall consider the order which we are now asked to vacate as made in a case fit to be submitted to this court by appeal.

The power of this court, or of the Court of Chancery, to stay proceedings on an order appealed from, is not denied; and this power extends to orders dissolving injunctions. It was formerly held that an appeal from an order dissolving an injunction revived the injunction. But, by our present practice, an appeal from an order does not stay proceedings thereon without an order of the Court of Chancery, or of this court, for that purpose first had, and upon complying with such terms as the court making the order to stay proceedings may impose.

Is the case before us a case in which the power to stay proceedings should be exerted? I answer this question as if the deed had not been delivered. I think it is a case in which, if the deed had not been delivered, the Chancellor or this court should, in the exercise of a proper discretion, stay the delivery of the deed. And I am of opinion that the delivery of the deed by the sheriff, within the time allowed for taking an appeal from the order dissolving the injunction, the appeal having been taken within that time, has not taken the case away from the discretionary power of this court.

The purchaser was the solicitor of the complainant in the foreclosure suit, and is a party to the bill filed to set aside that sale. If he, immediately after the injunction was dissolved, apprehending an appeal and an application to the Chancellor or to this court to stay proceedings, went to his co-defendant, the sheriff, and obtained the deed, the Chancellor or this court could, I apprehend, give the effect to the appeal which might have been given to it if he had not obtained the deed. This was not denied on the argument. It was not denied that this court could lay its hand on the parties to the suit, so as to prevent them from making advantage from any act of their own in attempting to avoid the power of this court. In a gross case

this court would not suffer itself to be defeated of the exercise of its discretion. This tests the principle.

If, then, Mr. Scofield had thus got the deed and brought ejectment, this court could restrain him. This brings us to what his Honor, the Chief Justice, seems to consider a bar in our way; which is, that Scofield, as the Chief Justice seems to think appears, has made a deed to another, and that other has brought the ejectment. It seems to me that, before this court, sitting in equity, should stop at this, they should be well satisfied that it was not a bar put up by the party himself. Is it gravely alleged here that Scofield has sold the property? It was alleged by one of the counsel who argued in support of the order of the last term, that the sheriff had made a deed to one Ford, a brotherin-law of Scofield, though the property was struck off to Scofield; and on this the difficulty is started that a new party in interest has come in.

There is nothing before us to show that a new party in interest has come in; and, if a new party in name has been made, it may have been done solely with the intention of embarrassing the complainant in the apprehended motion to this court to stay proceedings. Counsel in this court will certainly agree that parties should stand openly here on their case as it really is, and not seek to evade the power of this court by a feigned movement. It must either be a feigned movement, or it must be supposed that, though the property was struck off to Scofield, he bid as the agent of Ford, and that the deed was therefore made to Ford.

The injunction was dissolved without answer, and no answer is yet in, and we are in the dark as to this matter. But if this last supposition be true that, though the property was struck off to Scofield, he bid for Ford, and, not letting his agency be known, the sheriff struck it off to Scofield, and so entered it in his memorandum of sale, and the complainant, under these circumstances, filed his bill against Scofield—(he could do no otherwise, for he would not know that Ford had any interest in the matter)—I presume it will not be contended that such a covert operation and the making the deed to Ford after the complainant's bill was filed, would defeat the complainant of any order which he would be entitled to if the deed had been

made to Scofield ; to say nothing of the question whether the sheriff, under such circumstances, could legally make a deed to Ford.

There is nothing before us to enable us to act on any other ground than that Scofield bid and bought for himself; nor anything to show that he has sold the property to Ford or any other person. If he bid as agent, there is nothing to show whose agent he was, whether Ford's or the bank's; and if he bought as agent for the bank, the sheriff, certainly, could not make the deed to Ford.

There is nothing, in my judgment, in this newly started difficulty of a new party in interest having come in.

I am of opinion that the order of this court of the last term was right, and that it should not be vacated.

NEVIUS, J., and RANDOLPH, J., concurred in this opinion.

Order vacated.